# Guthrie *versus* Kerr.

| 85 | 303 |
| 174 | 455 |
| 85 | 303 |
| 199 | 245 |
| 85 | 303 |
| 19 SC | 4574 |
| 85 | 303 |
| 204 | 1404 |

1. A paper was taken from the register's office in 1852 which purported to be a will, but about the probate of which there was grave doubt. The subscribing witnesses had testified to its execution and their affidavit was endorsed thereon by the register. It was, however, neither filed nor recorded and was taken from the register's office. Twenty-four years thereafter it was directed to be filed and recorded by a judge of the Common Pleas. *Held*, that this was an undue exercise of judicial discretion.

2. The rule that if one party pay money to another for the use of a third person, or having money belonging to another, agrees with that other to pay it to a third, an action lies by the person beneficially interested, does not apply where the contract is for the benefit of the contracting party and the third person is a stranger to the contract and consideration; the action then must be by the promisee.

3. Where the contract leaves the promisor subject to a suit by the promisee or his personal representatives, and likewise to a third person beneficially interested, the latter cannot maintain an action.

4. A legatee cannot maintain a common law proceeding against the debtor of his testator's estate.

5. Blymire *v.* Boistle, 6 Watts 482, followed.

October 19th 1877. Before AGNEW, C. J., MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ. SHARSWOOD, J., absent.

Error to the Court of Common Pleas of *Clarion county :* Of October and November Term 1877, No. 3.

Debt by Rebecca Kerr, formerly Guthrie, against James W. Guthrie, for a legacy under the provisions of an alleged will of her father, Alexander Guthrie, Sr.

The defendant pleaded *nil debet*, payment with leave, &c.

The case is stated fully in the opinion of this court.

The verdict was for the plaintiff. The defendant assigned for error, inter alia, the admission in evidence by the court, Jenks, P. J., of the paper purporting to be the last will of Alexander Guthrie, Sr., and the entry of judgment for plaintiff upon the point reserved, which was " that under the pleadings and evidence the plaintiffs cannot recover."

*Wilson & Jenks* and *B. J. Reid*, for plaintiff in error.—The alleged will of Alexander Guthrie was not proved at the trial. Was it ever previously proved, so as to be evidence ? The certificate of the present register shows that no letters have ever been issued upon it, and that he has never judicially acted upon the question of its probate. In pursuance of a verbal order of the Court of Common Pleas, upon a former trial of this case, directing the paper to be filed and recorded, he filed and recorded it. His act was merely ministerial, carrying into effect an order that was *coram non judice*. The register, or the Orphans' Court (formerly Register's Court), on appeal can alone pass upon the sufficiency of proof to admit a will of personal estate to probate. We do not pretend that a formal decree of probate or approval of a will is essential, but if it is wanting, its place must be supplied by some

[Guthrie *v.* Kerr.]

judicial act of the register that necessarily implies such an adjudication, such as the granting of letters thereon : Shinn *v.* Holmes, 1 Casey 142 ; Logan *v.* Watts, 5 S. & R. 214 ; Holliday *v.* Ward, 7 Harris 489.

The plaintiff cannot recover in this action of debt under the pleadings. There is no mutuality, no privity of contract or estate between the parties, and no consideration passed from plaintiff to defendant : Beach *v.* Morris, 12 S. & R. 16 ; Robertson *v.* Reed, 11 Wright 115.

The Orphans' Court alone has authority to ascertain the amount of a decedent's property, and order its distribution among those entitled to it. But here is a demand to recover a distributive share of an intestate's estate by an action at law against the executor of an administrator, without a settlement of any account in the only tribunal which has jurisdiction of the subject or power to ascertain its amount : Whiteside *v.* Whiteside, 8 Harris 474, affirmed in Dundas's Estate, 23 P. F. Smith 479, and cases there cited.

The testator himself evidently meant that his estate should be administered upon ; that his executors should collect the balance due from James upon his contract, and then make distribution to those entitled. Hence his direction that receipts for payments made by James to his other children should be produced *to his executors*, and should be taken and received *by them* as payments on the article.

If it be contended, under the ruling in Torrens *v.* Campbell, 24 P. F. Smith 470, that plaintiff had a right to sell in his own name, on the ground that the defendant had money or property in trust for her, the action would be barred by lapse of time.

*Corbett & Clarke* and *James Campbell*, for defendant in error.— The will was formally proven by the subscribing witnesses and attested by the register, in conformity with the act providing for the probate of wills : Holliday *v.* Ward, 7 Harris 489 ; Thompson *v.* Thompson, 9 Barr 235 ; Long *v.* Kennedy, 1 W. & S. 399.

By the agreement of 1844 Rebecca Kerr was made the party to whom the money was made payable. The executors of Alexander Guthrie would not have been the proper parties to bring the suit ; it should be the legatee.

Where one pays money for the use of a third person, or having money belonging to another, agrees with him to pay it to a third person, assumpsit lies by the person beneficially interested : Blymire *v.* Boistle, 6 Watts 182 ; Commercial Bank *v.* Wood, 7 W. & S. 89 ; Flinn *v.* McGonigle, 9 Id. 75 ; Beers *v.* Robinson, 9 Barr 229 ; Keim *v.* Taylor, 11 Id. 163.

Mr. Justice WOODWARD delivered the opinion of the court, January 7th 1878.

Articles of agreement between Alexander Guthrie, senior, and

[Guthrie *v.* Kerr.]

James W. Guthrie, the defendant below, were executed on the 26th of January 1844, in which the terms of a former agreement made between the same parties on the 16th of May 1840, were recited, explained and construed. Alexander Guthrie, senior, transferred to the defendant, who was his son, all his real and personal estate, except certain household furniture and cattle then in the possession of himself, his daughter Rebecca, and his son Isaiah. In the first agreement, the consideration was stated to be $5750, and the further sum of $500, if that should be required by the father to be paid. The revised agreement fixed the consideration at the sum of $6250, which was not to bear interest until after the expiration of one year from the father's death. This was followed by stipulations in these words: "And it is further understood between the parties that any money, or its equivalent, that the said James W. Guthrie may heretofore have paid, or may hereafter pay to any of my children, for which he will produce their receipts, are to be taken as a credit on the agreement hereinbefore recited, provided said payments shall not exceed the amount given and bequeathed to them respectively by my last will and testament. * * * And it is hereby agreed that the said James W. Guthrie will, in a decent, comfortable and respectable manner, support and maintain his said father, Alexander Guthrie, during his lifetime."

On the trial, a paper, purporting to be the last will of Alexander Guthrie, senior, was offered and admitted in evidence. It was dated on the 5th of January 1846. The subscribing witnesses, on the 25th of March 1852, testified to its execution, and their affidavit was endorsed upon it by the register. The same day the persons named in it as executors endorsed a renunciation of their right to letters testamentary. The paper was then taken from the office, and was first produced afterwards in court by the plaintiff on the 2d of February 1876. Continuing the cause, which was then on trial, a verbal order to the register to file and record the alleged will was made by the court. The view which is entertained of the rights of these parties will make a final disposition of this litigation, and any extended inquiry into the question raised by the exception to the admission of this paper would be superfluous, but it may be said that there is grave doubt whether any act was done either by the register of 1852 or by the register of 1876, that amounted to a probate of this will. If it had been expressly declared to be proved—if, without that, it had been recorded—if letters testamentary or letters of administration *cum testamento annexo* had been issued—or, perhaps, if it had been simply filed, an adjudication by the officer would be presumed. Here, nothing was done in 1852 except to administer and endorse the oath of the subscribing witnesses. The paper was taken from the office, while the 17th section of the Act of the 15th of March 1832, expressly declares that all wills, after probate, shall remain in the register's

4 Norris—20

office, " except when required to be had before some higher tribunal, by *certiorari* or otherwise, and if removed for such cause, shall be returned in due course to the office to which they belong." In 1876, twenty-four years later, the filing and recording were directed by a judge of the Common Pleas. This was the exercise of a judicial discretion certainly, but it was not the judicial discretion which the law directs to be exercised in the admission of a will to probate.

In the instrument executed by him, Mr. Guthrie bequeathed to his daughter Rebecca, the plaintiff below, $2300, the horned cattle in his possession, and his household and kitchen furniture. Legacies of $800 each were given to two of his daughters, and one of $850 to his son, William Guthrie. $800 were bequeathed to his executors, $400 of which were directed to be divided amongst certain specified religious institutions. Any balance that should· remain after payment of the legacies, was given to his daughter Rebecca. Asserting a personal right to recover from the defendant under the terms of the agreement of the 26th of January 1844, and the provisions of the alleged will of her father, the plaintiff brought this suit for her legacy of $2300 on the 15th of July 1872. In the charge of the court the following instructions were given to the jury : " The consideration mentioned in the article is $6250, to be paid by J. W. Guthrie ; $200 of this was paid when the article was signed, leaving $6050. This sum, less the debts and expenses of administration, would constitute the fund out of which the legacies were to be paid *pro rata*. Whether the money referred to in these receipts and orders was paid, and whether it was paid outside of the maintenance and support of Alexander Guthrie, and what part thereof, are questions to be determined by the jury." The verdict was for the plaintiff for $3759.82.

It is to be observed that neither the name of the plaintiff nor the name of any other beneficiary was mentioned in the original and recited agreement of 1840, or in the revised agreement of 1844. By the former the balance of the consideration was provided to be paid as Alexander Guthrie, senior, should thereafter direct. By the latter, it was indicated rather than expressed, that it should be paid to legatees in his last will and testament. The instrument, given in evidence as a will, was executed two years after the second agreement was entered into, and the interests of the beneficiaries were then for the first time created and defined. Without a will the plaintiff could not move one step, and this paper is the very foundation of her title to the fund in controversy. Putting aside the general question whether a legatee can maintain an action against the debtor of a testator, on an express contract between them that the debtor should pay a particular legacy, it is necessary to ascertain what, under the will she sets up, she was entitled to receive, and upon and through whom she was given the right to make a claim. The bequests to the testator's children

[Guthrie v. Kerr.]

were followed by this clause: "It is further my will and desire that any money, or its equivalent, that my son James W. may heretofore have paid or expended for the use and benefit of my children hereinbefore named, or that he may hereafter pay or expend for their benefit, for which he shall produce their receipts *to my executors*, shall be taken and received *by them* as payments to be applied on the agreement between myself and him of the date of January 26th 1844, and shall be considered and taken *by them* as payments, or part payments, of the specific sums therein bequeathed, provided that the said receipts shall set forth and specify that they are to be applied as payments on the legacies aforesaid; and provided that the payments made by him to my other children shall in no case exceed the sums to them respectively bequeathed." It was the manifest intention of Mr. Guthrie in the testamentary disposition of his estate, to provide that it should be administered by his personal representatives. The bequest of a possible residue to his daughter Rebecca, creates a necessary implication of such an intention. And his purpose could only be carried into effect through the instrumentalities of the register's office and the Orphans' Court.

At the time of Mr. Guthrie's death the situation of the fund for the payment of legacies was such as to require the adjustment of questions with which a jury in the trial of a common-law action are unfit to deal. It was said by BLACK, C. J., in Holliday v. Ward, 7 Harris 491, that "juries are less competent to state an account requiring long calculations than for any other duty that could be assigned them." After the receipt by Mr. Guthrie of $200 at the date of the revised agreement, $6050 of the consideration remained unpaid. The pecuniary legacies bequeathed amounted to $5550. But the receipts admitted in evidence proved the payment of $2515.86 by the defendant to his father in his lifetime. Allowance was claimed for other sums, but they were rejected, and are of no present importance. Of the fund to meet $5550 of legacies, there remained in the defendant's hands only $3714.14. In this sum all the legatees were interested, and, in the disposition of it, all had the right to be heard. An attempt was made by the jury to apportion the plaintiff's share to her, and possibly approximate accuracy was reached. Her proportion of the $3714.14 was something like $1450, and the jury seem to have fixed something less than $1600 as the principal sum on which interest was cast to produce the verdict. Still, the attempt to marshal and distribute the assets of a dead man's estate through common law forms is always awkward, cumbrous and unsafe. And the employment of those forms in the settlement of an estate like this was equally novel and inappropriate. Each of the other legatees could have a separate action if the action of one could be maintained. The same questions would arise in each trial, and the jury in each case would erect an equit-

[Guthrie *v.* Kerr.]

able standard of adjustment and apportionment for themselves. The defendant would be harassed by oppressive litigation, and, at the same time, be deprived of the safeguards against haste and prejudice which the patient, careful and deliberate investigation of the Orphans' Court provides for him.

Under the particular facts presented here, no review is required of the cases in which the right of a third person to sue in his own name on a promise made for his benefit by one to the other of two contracting parties has been involved. While they are all not readily reconcilable, the distinction stated by Mr. Justice SERGEANT in Blymire *v.* Boistle, 6 Watts 182, has generally been kept in view. The rule laid down in that case was that if one pay money to another for the use of a third person, or having money belonging to another, agree with that other to pay it to a third, action lies by the person beneficially interested. But where the contract is for the benefit of the contracting party, and the third person is a stranger to the contract and consideration, the action must be by the promisee. In the one instance the promisor becomes the custodian and trustee of a fund actually belonging to the beneficiary. In the other he undertakes to pay some sum or do some act in consideration of a benefit conferred on himself. The first branch of the rule was stated by Mr. Justice MERCUR, in Torrens *v.* Campbell, 24 P. F. Smith 470, to be, that where the promisor receives money, or personal property to be converted into money, in trust for a third party, the action may be sustained in the name of the latter. And the reason given for the distinction may be gathered from the opinion in Blymire *v.* Boistle. Where the fund actually belongs to the beneficiary, he ought to have the right to release the demand or recover it by action. But where the contract leaves the promisor subject to a suit by the promisee, if he were also subject to a suit by the third party, he would be liable to two actions at the same time for the same debt. Here, some of the covenants of the defendant in the article of agreement could have been enforced by an action in the name of Alexander Guthrie in his lifetime, and a suit for the breach of any or all of them could have been maintained by his personal representatives. It would be a harsh rule of law that would throw on the defendant the additional burthen of a suit by each of the legatees.

There is nothing in the revised statutes settling the powers of the different courts to warrant this proceeding. Under guards provided for the protection of the personal representatives and the estates of testators, the Common Pleas and Orphans' Court have concurrent jurisdiction to enforce the payment of legacies not charged on land. Under the 47th section of the Act of the 24th of February 1834, such payment may be directed by the Orphans' Court, on the application of a legatee, or any other person interested, the applicant executing the requisite refunding bond.

[Guthrie *v.* Kerr.]

This was the proceeding in Dundas's Estate, 23 P. F. Smith 474. By the 50th section of the same act, a legacy may be recovered in an action of debt, detinue, account render, or on the case; but it must be brought against the executors; and before execution can issue the same security must be given that is required by the 41st section from distributees. The right to an action of debt for a legacy was declared to be clear in Gilliland *v.* Bredin, 13 P. F. Smith 393. But a common-law proceeding by a legatee against the debtor of a testator's estate is justified neither by statute nor precedent nor principle.

Various other questions were raised on the trial below and in the argument here, but no practical good would come from their discussion. Judgment reversed.