Statement of Facts.

## SAMUEL ADAMS v. DAVID KUEHN.

ERROR TO THE COURT OF COMMON PLEAS OF LEHIGH COUNTY.

Argued January 31, 1888—Decided February 27, 1888.

1. To the general rule that no one can sue on a contract to which he is not a party, an exception exists in favor of persons who, though not formally parties to the contract, may yet be regarded as parties to the consideration on which the undertaking rests.

2. So, where money or property is placed by one in the hands or possession of another to be paid or delivered to a third person, an equitable title to the money or thing which is the consideration of the promise, passes to the beneficiary and he may release or compel performance in his own name.

3. But, when the promise is to pay to another an existing indebtedness of the promisee, upon a consideration moving wholly from the latter, such promise is for the benefit of the promisee, the original debtor, and must be released or enforced by him.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and WILLIAMS, JJ.; TRUNKEY and CLARK, JJ., absent.

No. 228 January Term 1887, Sup. Ct.; court below, No. 40 January Term 1886, C. P.

On December 14, 1885, David Kuehn brought assumpsit against Samuel Adams, declaring in the amended narr. substantially that, Jacob and Milton Weaver, trading as Weaver Brothers, tobacconists, being indebted to the plaintiff in two several notes, dated on June 28, 1884, each for $158.50, and payable at sixty and ninety days, respectively, on August 12, 1884, a discourse was had between Weaver Brothers and Samuel Adams, the defendant, wherein it was agreed that in consideration of a judgment obligation for $25,500 confessed by Weaver Brothers to said Adams, the latter would pay and satisfy the debt due and to come due from Weaver Brothers to the plaintiff; nevertheless the defendant had not paid the said indebtedness, etc. The plea was non assumpsit.

At the trial on May 3, 1886, it was made to appear that on August 12, 1884, Weaver Brothers, then insolvent, executed

to Samuel Adams, the defendant, a judgment note for $25,500, on which judgment was entered the next day, execution issued and the stock of Weaver Brothers sold at sheriff's sale to Adams. The plaintiff proved the indebtedness of Weaver Brothers to himself, and called Jacob and Milton Weaver, who testified to the effect that the judgment note was given at the office of Mr. Adams in the presence of Mr. F. M. Trexler, a member of the bar, and the firm book accounts transferred the same day; that an assignment for the benefit of creditors was suggested, but Adams urged the firm to give him a judgment, suggesting the sum of $37,000, upon which to sell their stock at sheriff's sale, when Mr. Trexler called his attention to the fact that he already held a judgment for $11,500 and he then said to make it $25,500; that the note for that amount was executed and delivered and the book accounts assigned upon the agreement of Adams that he would give the obligors $4,000 he had previously promised them, convey to them certain real estate and pay the claims of all their creditors so as to give them a "free name;" that the terms of Adams's contract were put in writing at his direction by Mr. Trexler, but that when Adams received the note he went away promising to sign the contract the next day, but did not sign it at all; that after the sheriff's sale the stock was put into the management of Mr. Trexler and certain claims against the firm were paid out of it. It was admitted that Mr. Adams was an indorser for the firm to a large amount.

To meet the plaintiff's case, both the defendant and Mr. Trexler testified in substance that the judgment obligation was given without any undertaking for the payment of Weaver Brothers' creditors; that no engagement thereto was put in writing or so directed; that the liabilities of the firm to the defendant not including those covered by the prior note or judgment for $11,500, were ascertained at $29,000, and a credit considered reducing the amount for which the note was given to the sum of $25,500, and that certain of the other creditors who were subsequently paid by the defendant were paid after the sheriff's sale in pursuance of a promise to Weaver Brothers made after the note was given, but not as legal obligations.

The court, ALBRIGHT, P. J. charged the jury and answered the defendant's points, inter alia, as follows:

Charge of Court below.

The defendant. Samuel Adams, is not a party to the promissory notes for which the plaintiff seeks to recover. He did not sign them as maker, nor as indorser, and before the plaintiff can recover against Samuel Adams, he must prove a liability in law on Samuel Adams's part to pay. The allegation is that Samuel Adams became liable to pay the claim of the plaintiff by reason of the promise, which it is alleged he made to the Weaver Brothers at the time they confessed a judgment to him, and that the promise was the inducing cause of giving the judgment. . . . . .

Assuming that Adams was a creditor of the Weaver Brothers at the time, and that David Kuehn also was a creditor, the confession of the judgment due one day after date was an advantage to Samuel Adams. It enabled him at once, and without suit to obtain a judgment, which became a lien on the real estate of the Weaver Brothers, and it enabled him the day afterwards to issue execution and to seize all the goods and chattels, which they owned. It was an advantage which he obtained to the detriment of other creditors of the Weaver Brothers. If it is proved, gentlemen, that the promise to pay all the creditors, was the inducing cause of the confession of that judgment by the Weaver Brothers, and if Kuehn was at that time a creditor, he is entitled to recover. The promise bound Samuel Adams. It would not matter that the promise was not made directly to David Kuehn. If that promise was made, and he was a creditor, he could avail himself of that promise and enforce it by a suit; and if the promise set up by the plaintiff was not made, then the plaintiff cannot recover, no matter what the indebtedness of the Weaver Brothers to Adams may have been, whether it was the amount of the judgment, more or less. If that promise was made, and it was the consideration of confessing the judgment, then, as I said to you, Adams is bound by it, even although the judgment was given to him for no more than the Weaver Brothers owed him, and if he did not make the promise, David Kuehn cannot recover, although the judgment was for more than was owing. We cannot in this issue determine whether the judgment was for the amount Adams was liable for, and what the Weaver Brothers owed him, or for more or less. That cannot affect this issue. The main question in the case is whether the promise set up by the plaintiff was made or not.

Charge of Court below.

[Upon this question of the indebtedness of the Weavers to Adams considerable evidence has been introduced and has been commented upon extensively. On the part of Adams it was shown to rebut the idea that the promise was made and to show possibly the improbability of its being made, that the Weaver Brothers were indebted to him for the amount of this judgment and the amount of a judgment which had previously been given of $11,500, and much more; and on the part of the plaintiff, to meet that theory of the defendant, it has been attempted to be shown that the indebtedness to Adams was not that much, nothing like it. If that is true it helps you to determine as to whether this promise was made or not. You can use it as a circumstance for that purpose; excepting its bearing upon that question it has nothing to do with the case.][5]

The Weaver Brothers (Jacob Weaver and Milton Weaver) have testified in substance that the promise was made. Jacob Weaver said that when they met at the office a judgment was spoken of; that it was said in substance that Adams wanted a judgment from them, and that there was some hesitancy on their part, or on the part of one of the brothers to confess the judgment. One of them spoke of an assignment for the benefit of creditors, and said he preferred that course, and Jacob says that he said under no consideration would they sign a judgment, because they did not owe him anything; that Mr. Trexler then said that the Weaver Brothers had a proposition to make, and that then he (Jacob) said "that all the creditors must be paid," and that it was then said by Mr. Adams that Mr. Trexler, who was sitting there and writing, should write it down, and I believe it was testified, and it is for you to remember what the testimony was, that Adams said "all right," and then it was said the Weaver Brothers, or one of them, said that four certain creditors of theirs should be paid first: Wertman, Stevens, Rebecca Weaver and certain money which one of the Weavers had in hand of certain minor children. Milton Weaver testifying, said that the judgment was spoken of, and that Mr. Adams wanted a judgment rather than an assignment for the benefit of creditors, and that his brother (meaning Jacob) then said that all the creditors must be paid; that Wertman, Stevens, Rebecca Weaver and the minor children's money should be paid first, but that all the creditors

had to be paid before they confessed a judgment; that when the judgment had been written he (Milton) said to his brother Jacob: "Shall I sign this death warrant?" and that then it was said: "Yes, under those conditions you can sign," and he signed it.

This is denied by Mr. Adams totally. He says that there was no agreement to pay all the creditors; that that was not demanded by the Weaver Brothers; that nothing was said. Mr. Trexler testified that nothing was said to that effect; that there was no understanding or promise to pay all the creditors, and that the Weaver Brothers did not ask it. Then it is alleged that you can find from the subsequent conduct of the parties interested, possibly from what they said, something which bears upon the question as to whether the promise was made or not. It is said that Mr. Adams's subsequent conduct showed that he recognized the existence of a promise such as the plaintiff sets up. On the part of the defendant it is insisted that you can find from the conduct and possibly the declarations of the Weaver Brothers afterwards made, that there was no such promise; that they knew there was none. If there is any conduct of either of the parties or a subsequent declaration, which tends to throw light upon the question as to whether the contract was made before the judgment was signed, you will receive it and give it its due weight. But in order to be binding, the promise to pay the other creditors must have been made at the time that judgment was given, or immediately before, and it must appear that it was one of the conditions understood between the parties, that the other creditors should be paid; because if Mr. Adams had made a promise of that kind after he had the judgment, whether before or after the sheriff's sale, then it could not be enforced.

These instructions cover all the legal questions arising in the case. To repeat: We say to you that the confession of the judgment to Mr. Adams was an advantage to him, and if at the same time there were other creditors of the Weaver Brothers, it was a detriment to them, and if the inducing cause to give the judgment, to confess it, was the promise of Adams, a demand made by the Weaver Brothers that the other creditors should be paid, and assented to by him, then if David Kuehn was at that time a creditor, he can recover;

and if that promise was not a consideration moving the Weaver Brothers to confess the judgment, then the plaintiff cannot recover. . . . . .

Defendant's points:

1. There is no proof in the cause that the debt of the plaintiff was included in the judgment given by Weaver Brothers to Adams, and consequently, it was not burdened with any trust to pay the same amount out of the proceeds.

Answer: Negatived. The plaintiff does not seek to recover on the theory set forth in this point.

2. The plaintiff having declared upon a contract specially, it is incumbent on him to support their averments by proof consistent therewith; proof of a contract to pay all the debts of Weaver Brothers will not support the averment contained in the declaration, and for that reason the verdict must be for the defendant.

Answer; Negatived.[4]

3. There is no evidence in the cause that Adams agreed to assume and pay the debt of the plaintiff as the consideration for the giving of the judgment of August 12, 1884.

Answer: Negatived.[3]

4. No privity of contract between the plaintiff and the defendant has been shown and consequently the plaintiff cannot recover.

Answer: Negatived.[2]

5. Under all of the evidence the verdict must be for the defendant.

Answer: Negatived.[1]

The verdict of the jury was for the plaintiff for $348.31. A rule for a new trial was subsequently discharged, and judgment entered on the verdict. Thereupon the defendant took this writ, assigning for error, inter alia:

1-4. The answers to the defendant's points.[1 to 4]

5. The part of the charge embraced in [ ][5]

*Mr. Edward Harvey*, for the plaintiff in error:

The answer to the defendant's first point, not assigned for error, left the case to depend on the legal effect of the contract between Weaver Brothers and Adams.

1. The cause of action testified to by the Weavers was entire. A party cannot separate an entire cause of action into parts, and sue for one part on one occasion and for the other at another: Carvill v. Garrigues, 5 Pa. 153; Smith v. Jones, 15 Johns. 229; Logan v. Caffrey, 30 Pa. 196; Hess v. Heeble, 6 S. & R. 57; Miller v. Maurice, 6 Hill 122; Wilson v. Hamilton, 9 S. & R. 429; Farrington v. Payne, 15 Johns. 432; Clay Telephone Co. v. Root, 17 W. N. 200; Lucesco Oil Co. v. Brewer, 66 Pa. 351; Morgan v. McKee, 77 Pa. 228. The contract being entire and Kuehn a stranger to the consideration, he was not a proper party to enforce it: Dicey on Parties, 94: 1 Chit. Pl., 2; 1 Whart. Con., §§ 506, 893; Edmundson v. Penny, 1 Pa. 335; Blymire v. Boistle, 6 W. 183; Finney v. Finney, 16 Pa. 380; Robertson v. Reed, 47 Pa. 115; Torrens v. Campbell, 74 Pa. 475.

2. That a third person, for whose alleged benefit the contract was made, may sustain an action, money or property must have been placed in the hands of the defendant for his use, or he must have become a party to the new agreement: Kountz v. Holthouse, 85 Pa. 237. When the contract leaves the promisor liable to a suit by the promisee, as well as by the third person beneficially interested, the latter cannot sue: Guthrie v. Kerr, 85 Pa. 303; Justice v. Tallman, 86 Pa. 147; Wynn's Admr. v. Wood, 97 Pa. 216; Zell's App., 111 Pa. 532.

3. The act of April 26, 1855, P. L. 308, provides that no action shall be brought upon any special promise to answer for the debt or default of another, unless the agreement, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith. This provision has no application when the consideration moves directly from the promisor to the promisee: Malone v. Keener, 44 Pa. 107; Wynn's Admr. v. Wood, 97 Pa. 216; but if the agreement is merely collateral to the continued liability of the original debtor, the statute is an effective bar: Maule v. Bucknell, 50 Pa. 52; Shoemaker v. King, 40 Pa. 110; Campbell v. Lacock, 40 Pa. 448; Ramsdale v. Horton, 3 Pa. 330.

4. The contract declared upon was that the defendant undertook to pay the debt of the plaintiff. The testimony was that the defendant promised Weaver Brothers to pay all their

debts, and it was admitted that the plaintiff's name was not mentioned. The variance was fatal: Sartwell v. Willcox, 20 Pa. 118; Stump v. Hutchinson, 11 Pa. 533; Cunningham v. Shaw, 7 Pa. 401; Clark v. Partridge, 2 Pa. 13; Hunter v. Mc-Hose, 100 Pa. 38.

*Mr. C. J. Erdman* (with him *Mr. Henninger* and *Mr. Dewalt*), for the defendant in error:

1. By the verdict the jury found, (1) that the plaintiff was a creditor of Weaver Brothers at the time of the confession of judgment and the transfer of the book accounts, and (2) that the giving of the judgment and the transfer of the accounts was the consideration of a promise by the defendant to pay the debts of Weaver Brothers. Under Roth v. Barner, 2 Penny. 214 (12 W. N. 523), and Hind v. Holdship, 2 W. 104, there was no error in this finding nor in the instruction to the jury. The only material difference between the case at bar and Roth v. Barner is, that in the latter the promise was explicit to pay the particular debt in suit, whilst in the case at bar the promise was to pay all the debts of Weaver Brothers. The objection that because the contract was entire the plaintiff could not sue, is met by Robertson v. Reed, 47 Pa. 116, for the defect if any, was amendable by the addition of Weaver Brothers as plaintiffs: Hind v. Holdship, 2 W. 104; Guthrie v. Kerr, 85 Pa. 303; Torrens v. Campbell, 74 Pa. 470.

2. As to the only remaining question, the giving of the judgment was a benefit to the defendant as it gave him the entire stock of the firm and a lien upon all their real estate; and it was a detriment to the other creditors, including the plaintiff, because it delayed the payment of their claims until all of the defendant's claims were satisfied. That these considerations made the defendant's promise a valid promise is shown by numerous cases: Hind v. Holdship, 2 W. 104; Beers v. Robinson, 9 Pa. 229; Torrens v. Campbell, 74 Pa. 470; Blymire v. Boistle, 6 W. 182; Morrison v. Beckey, 6 W. 349; Hubbert v. Borden, 6 Wh. 79; Ramsdale v. Horton, 3 Pa. 330; Campbell v. Lacock, 40 Pa. 448; Vincent v. Watson, 18 Pa. 96; Bellas v. Fagely, 19 Pa. 273; Townsend v. Long, 77 Pa. 143; Wynn's Admr. v. Wood, 97 Pa. 216; Justice v. Tallman, 86 Pa. 147.

OPINION, MR. JUSTICE WILLIAMS:

In 1884 and for several years prior thereto, the firm of Weaver Brothers was extensively engaged in the manufacture of cigars. Samuel Adams was an accommodation indorser for them, and in August, 1884, was upon their paper for upwards of $40,000. He became satisfied that the firm was insolvent, and asked them to secure him by giving him a judgment note in a sum sufficient to cover his indorsements, so that he could have judgment entered against them and their stock seized and sold by the sheriff. On the 12th of August, 1884, they executed and delivered to him a judgment note for $25,500, on which he caused judgment to be entered and execution to issue. The Weaver Brothers claim that this judgment note was executed by them upon the promise by Adams that he would do the following things, viz.: that he would pay all their debts without regard to their number or amount; that he would pay to them the sum of $4,000 in cash; give them a house and lot adjoining, and some vacant lots in rear of, the property then occupied by them; provide them a half interest in a grocery store and give them a "free name." David Kuehn was a creditor of the Weaver Brothers at the time of their failure, and brings this suit against Adams to recover the debt due him from Weaver Brothers. He seeks to recover on the contract which the Weavers claim to have made with Adams when the judgment note was given him. Upon the trial two questions were raised; one of fact as to the making of the contract on which the plaintiff sued, and one of law as to his right to sue upon it, if made as alleged. The jury, under an instruction from the court that the action was well brought if they found the contract to have been made, have decided that this remarkable contract was made as testified to by the Weavers. The question now to be considered is the correctness of the instruction.

The contract sued on is one to which the plaintiff is a stranger. It was made with the Weaver Brothers. The consideration moved wholly from them and they were the parties to be benefited by the performance of its terms. The common law rule is that "no one can sue on a contract to which he is not a party:" Whart., Contracts, 784; Hare on Contracts, 193. The same rule is laid down in Chitty's Pleading. It is

still adhered to in England. In this country it is recognized as the law in most of the states and by the Supreme Court of the United States: 98 U. S. Rep. 123. In this state it was stated very clearly by Justice SERGEANT in Blymire v. Boistle, 6 W. 182. That case has been followed and the authority of the rule recognized in several later cases, among which are Torrens v. Campbell, 74 Pa. 472, and Kountz v. Holthouse, 85 Pa. 235. In the latter of these cases it was applied by MERCUR, J., who said: "As he (the plaintiff) was a stranger to the contract and to the consideration on which it rested, he could not recover." In Guthrie v. Kerr, 85 Pa. 303, where it was apparent that an action could have been maintained by the personal representatives of Alexander Guthrie, it was said that "it would be a harsh rule of law that would throw on the defendant the additional burden of a suit by each of the legatees."

There is, however, a line of cases in which a third party has been allowed to recover on a contract to which he was not a party, and several of these are brought to our attention by the defendant in error. An examination of these cases will show that they recognize the rule as we have stated it, and are relieved from its operation because of the nature of the consideration of the contract sued on. The distinction on which they rest is pointed out in Blymire v. Boistle, supra. Where one person enters into a contract with another to pay money to a third, or to deliver some valuable thing, and such third party is the only party interested in the payment or the delivery, he can release the promisor from performance or compel performance by suit. If, on the other hand, a debt already exists from one person to another, a promise by a third person to pay such debt is for the benefit of the original debtor to whom it is made, and can only be released or enforced by him. If it could also be enforced by the original creditor the promisor would be liable to two actions for the same debt at the same time and upon the same contract. Among the exceptions, are cases where the promise to pay the debt of a third person rests upon the fact that money or property is placed in the hands of the promisor for that particular purpose. Also where one buys out the stock of a tradesman and undertakes to take the place, fill the contracts, and pay the debts of his

vendor. These cases as well as the case of one who receives money or property on the promise to pay or deliver to a third person, are cases in which the third person, although not a party to the contract, may be fairly said to be a party to the consideration on which it rests. In good conscience the title to the money or thing which is the consideration of the promise passes to the beneficiary, and the promisor is turned in effect into a trustee. But when the promise is made to, and in relief of one to whom the promise is made, upon a consideration moving from him, no particular fund or means of payment being placed in the hands of the promisor out of which the payment is to be made, there is no trust arising in the promisor and no title passing to the third person. The beneficiary is not the original creditor who is a stranger to the contract and the consideration, but the original debtor who is a party to both, and the right of action is in him alone.

The application of this rule to the case under consideration is decisive of the plaintiff's case. If Adams made the agreement sued on, he made it with Weaver Brothers. Its various provisions were for their benefit. No fund was provided for the payment of the plaintiff's debt, no property was set apart for his benefit. The note, under all the evidence, was given for the purpose of covering the indorsements of Adams. This case therefore stands under the general rule and is not brought within the limit of the exceptions to its operation. The suggestion of the court below that the title might be amended by adding the name of the Weaver Brothers as legal plaintiffs, will not relieve against the difficulty. If the plaintiff can maintain his suit so can every creditor of the Weaver Brothers maintain his separate action for his particular debt upon the same contract, and we would then have the Weaver Brothers as legal plaintiffs in possibly one hundred or more suits for the use of so many separate creditors on the same contract; and, to close the series, an action by the Weavers to recover for the non-performance of such portions of the contract as related to payment of money or delivery of property directly to themselves. The inconvenience and injustice of such a result is too obvious to require discussion.

Judgment reversed.