# Malone's Appeal.　　Neal & Wampler's Appeal.

1. Upon confirmation of an inquisition finding a party an habitual drunkard, it is the duty of the court to make an order for the payment of the expenses of the inquisition.

2. The real estate of an habitual drunkard was sold by order of the court, he having no personal estate with which to pay the costs of the inquisition : *Held*, that these costs could not be paid to the prejudice of a prior lien creditor.

3. All costs that are connected with the sale and leading to it should be paid from the proceeds; all precedent to it are not to be allowed.

4. A mechanics' lien was filed against "a double dwelling-house." The structure was divided from the bottom to the top by a studding partition with no doors between; with two front and back doors, double chimney in the centre of the building; the cellar walls, roof, outside boarding, &c., continuous. *Held* to be two houses, on which the lien should be apportioned, under the Act of June 16th 1836, sect. 13.

5. In distributing proceeds of real estate an auditor cannot go behind the record of a judgment to inquire into its validity.

6. Borland's Appeal, 16 P. F. Smith 470, referred to.

November — 1875. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Appeals from the Court of Common Pleas No. 1 of *Allegheny county* : Of October and November Term 1875, No. 259 and 274.

29 P. F. SMITH—31

[Malone's Appeal.]

In the distribution of the proceeds of the sale of the real estate of William Clinton, an habitual drunkard.

The report of George F. Gilmore, Esq., the auditor, showed the following facts:—

On the 20th of May 1873, two mechanics' liens, amounting together to $937.18, in favor of Neal & Wampler; on the 10th of June, a mechanics' lien for $62.48, in favor of G. W. Fisher; and on the 10th of September a mechanics' lien for $50, in favor of A. T. Frick, were entered against Clinton.

The description of the property in each case was: " All that certain double two-story frame building, situate, &c. ; said building is a double dwelling-house, two stories high, with a cellar under the same, and has a front 32 feet on, &c., and a depth of 32 feet, containing eight rooms and an attic."

There were two judgments against Clinton, entered respectively April 16th and May 5th 1873, amounting together to $131.45.

On the 9th of May 1873, M. L. Malone obtained a judgment against Clinton on warrant of attorney, dated May 8th 1873, for $5055.88; a rule had been granted by the court to open this judgment for want of consideration; the rule was pending when the auditor made his report. There was also another judgment of Malone against Clinton, entered May 9th 1873, for $341.95.

There were a number of other judgments entered from May 13th 1873 to August 28th 1873; not necessary to particularize.

On the 31st of October 1873, an inquest found that Clinton was an habitual drunkard, and had been so for a year prior to the finding.

The real estate of Clinton was sold by his committee by order of the Court of Common Pleas, and the proceeds of sale, $3350, referred to Mr. Gilmore as auditor for distribution.

Besides the judgments and mechanics' liens, before referred to, the following claims were made on the fund:—

| | |
|---|---:|
| Expenses in procuring and making the sale, . . | $118.25 |
| Expense of the inquest, commissioner's fee, . . | 50.00 |
| Counsel fee of T. S. Parker, for conducting the proceedings in relation to the inquest and as counsel generally for the committee, . . . . | 410.00 |
| Business tax of Clinton, . . . . . | 52.80 |
| And fees of jury of inquest, . . . . . | 103.00 |

(Both paid by his wife, which she claimed should be refunded to her.)

| | |
|---|---:|
| Her claim as for exemption under an execution, . | 300.00 |
| Committee's compensation, ·. . . . . | 150.00 |

The auditor heard very much testimony on the question whether the structure against which the mechanics' liens were entered constituted two buildings, and whether the liens, therefore, should be apportioned to each, under the Act of June 16th 1836, sect. 13, Pamph. L. 699, 2 Br. Purd. 1033, pl. 43, which provides : that when the

[Malone's Appeal.]

claim shall be a joint claim against two or more buildings, the claimant shall at the time he files his claim designate the amount which he claims to be due on each, otherwise he shall be postponed to subsequent lien creditors.

He said :—

" On this question quite a number of witnesses have been called In describing the houses these witnesses do not differ materially as to the facts. The testimony of Valentine N. Elliott, a contractor and builder, if condensed somewhat, may be thus stated, and answers substantially for all the last-named witnesses (who considered the structure two houses) :'they are two distinct houses, as distinct as any two houses in a row ; completely divided by a studding partition, lathed and plastered on both sides from lower floor to top of attic, with no connecting doors between them. There is a separate front door for each house at opposite corners, and back doors the same. There are two separate sets of cellar stairs. The cellars are divided by the foundation for the double chimney in the centre of both, and by substantial boarding. The front yards are divided by a paling fence clear to front fence. They are separately occupied now. Architecturally speaking, and in common language, a double house has a hall in the middle and rooms on each side. The cellar walls are continuous, and the roof and outside boarding are continuous, and the sills also, as a matter of economy, as others build together on adjoining lots.'

* * * " The witnesses on the other side testify as to the continuous sills, and boarding, and roofing, and casing; and that by cutting doors through one family could use it all as one house. * * * Mr. Wampler and Mr. Fisher both say they engaged to furnish materials for and do work on a building or house. Mr. Soles and Mr. Bradley, both long-time builders, say it is one house. In all other material facts all the witnesses agree in the description, substantially.

" The auditor is of the opinion that the testimony shows clearly that the structure in dispute constitutes two houses ; as distinctly so as any two or more houses in a row in Pittsburg or elsewhere. * * * If this fact of two houses, instead of one, is correctly found, then it follows that the liens must be postponed to the liens of other creditors ; because theirs was not apportioned." * * *

In stating the distribution as awarded by him,

He allowed the claim of the commissioner holding the inquest ; jury fees paid by Mrs. Clinton and claim for putting up hand-bills and subpœnaing witnesses, in all $172.00

Taxes paid by Mrs. Clinton ; her exemption claim $300 and Mr. Parker's counsel fee $410, in all . . . 762.80

Expenses in relation to procuring and executing the order of sale and committee's compensation $150, in all . 278.25

After deducting the foregoing sums and the expenses of the audit, there remained for distribution . . 2010.45

[Malone's Appeal.]

The auditor awarded the payment of the judgments of April 16th and May 5th 1873 to their holders; also, to Malone his smaller judgment, which, according to his report, left the sum of $1537.05 for further distribution.

Referring to the judgments posterior to Malone's, he says:—

"It will be found that these seven last stated judgments will take all the balance of the fund, after allowing the prothonotary his fees for recording, &c., even if the large judgment to Malone is entirely swept away. The auditor sees no other mode of dealing with the balance of the fund, except in this alternative way, while the rule and contest are still pending in reference to said Malone judgment. If that judgment in whole or part is allowed to stand, it will come in first for payment; that is, before the seven last judgments, and according to the order and date of the liens."

Malone excepted to the report of the auditor:—

1. Allowing from the fund for distribution the expenses of the inquest as to Clinton being an habitual drunkard, &c.

2. Allowing Mrs. Clinton $300 "exemption."

3. Allowing the amount paid by her for taxes $52.80.

4. Not appropriating the whole fund, less expenses of sale and of the audit, to Malone's judgment.

The mechanics' lien creditors excepted to the report.

Not allowing their liens and deciding that the structure against which the liens were entered was two buildings.

After argument of the exceptions, the Court of Common Pleas disallowed the $300 "exemption" and the taxes, $52.80, awarded to Mrs. Clinton, and with these modifications confirmed the report of the auditor.

Neal & Wampler and Malone appealed to the Supreme Court.

Neal & Wampler assigned for error: the confirmation of the auditor's report; not allowing the claims of the mechanics' lien creditors, and deciding that the structure was one building; deciding that Malone's judgment was a valid lien and applying any of the proceeds of the sale to it.

Malone assigned for error:—

1. Decreeing payment of the claims of the commissioner holding the inquest; to Mrs. Clinton for amount paid the jurors holding the inquest; counsel fee to committee; cost of serving subpœnas, &c.

2. Allowing out of the fund the expenses of the inquest as to Clinton's habitual drunkenness.

3. Not appropriating the whole fund, less expenses of sale and costs of audit, to Malone's judgments.

*J. Barton*, for Neal & Wampler, appellants.—Malone's judgment having been obtained on a warrant after the time when the inquest found he had been incompetent, was not valid: Hope *v.* Everhart, 20 P. F. Smith 231.

[Malone's Appeal.]

*F. C. Lazear*, for Malone, appellant.—The liens against Clinton's real estate were to be preferred to expenses, except those in effecting the sale : Wade's Appeal, 5 Casey 329 ; Ramsey's Appeal, 4 Watts 74 ; Bryan *v.* Eberhart, 4 Phila. R. 228 ; Johnston's Estate, 9 Casey 513.   The validity of the Malone judgment could not have been inquired into by the auditor, and the appellants cannot, therefore, question it : Borland's Appeal, 16 P. F. Smith 470 ; Horner *v.* Hower, 3 Wright 126 ; Dyott's Estate, 2 W. & S. 557.   As to that part of the decree which postpones the liens of the mechanics and material-men to the liens of the judgment-creditors, he cited Thomas *v.* James, 7 W. & S. 381 ; Chambers *v.* Yarnall, 3 Harris 265 ; Goepp *v.* Gartiser, 11 Casey 133.

*T. S. Parker*, for appellees, claiming to be allowed the expenses, &c.

Mr. Justice MERCUR delivered the opinion of the court in each appeal, January 6th 1876.

MALONE'S APPEAL.

This is an appeal from a decree of the court distributing the fund raised by a sale of the real estate of William Clinton, an habitual drunkard.   The sale was made by his committee on leave of the court.   The appellant claims the money should be applied to a judgment in his favor on the land sold.   After the entry of this judgment, Clinton was by inquisition duly found to be an habitual drunkard.   It does not appear that the court then made any order in regard to the payment of the costs attending the inquisition, as is made its duty by the second section of the Act of 16th April 1849, Purd. Dig. 981, pl. 13.   Those costs appear to be unpaid.   There now appearing to be no personal estate out of which they can be paid, the auditor reported and the court decreed that they be paid out of the proceeds of the real estate.   The fund is insufficient to pay the judgment of the appellant.   If these costs are thus paid, it takes that amount from the appellant, which he would otherwise receive on his judgment.

All the assignments involve the correctness of giving a preference to the payment of these costs.

The 21st section of the Act of 24th February 1834, Purd. Dig. 421, pl. 85, relating to the debts of a decedent, creates preferences in favor of funeral expenses, medicine and medical attendance, servants' wages, &c., yet it never has been held to postpone record liens, although for want of personalty such debts may be paid out of the proceeds of real estate.   So the preferred wages of miners, laborers and mechanics are not entitled to a preference over prior liens of record in the distribution of the proceeds of real estate : Wade's Appeal, 5 Casey 328 ; Johnston's Estate, 9 Casey 511.

With fully equal reason, it must be held that the costs attending

[Malone's Appeal.]

the inquisition shall not be paid out of the real estate of the lunatic to the prejudice of a prior judgment-creditor. In the absence of any order or decree of the court charging these costs on the estate of the lunatic, I am unable to see how they have the force of a lien. But surely they cannot now occupy any better position than if the court had, on the confirmation of the proceedings, made an order of record that they be paid out of the estate. If they had then become a recorded lien, they would not thereby have acquired a preference over the prior judgment lien of the appellant. It is urged, however, that the expenses incurred in conducting the proceedings in lunacy should be paid out of the estate in the hands of the committee. Weir *v.* Myers, 10 Casey 377, is cited in support of this view. The correctness of that case is conceded whenever the facts admit of its application. No question arose there in regard to a prior lien on real estate. Nor does it appear that the fund then in the hands of the committee for distribution arose from the sale of real estate. The question now is not whether the costs of the proceedings shall be paid by the committee out of the assets in his hands, but whether he can take from a prior judgment-creditor the fruit of his vested lien? We are clearly of the opinion that he cannot thus divert the property which in equity belongs to another. The second and third assignments are sustained.

The first assignment appears to blend costs and expenses connected with the sale with the other costs and expenses made on the inquisition and with the charge for professional services of counsel for more than a year. The data given is insufficient to enable us to separate them on correct principles. Such as are reasonably connected with, or necessarily leading to the sale, should be paid out of the proceeds ; all preceding items should be disallowed.

A question has arisen involving the validity of the judgment in favor of the appellant. To settle this, an issue is now pending. It cannot, therefore, at present be determined how much of the judgment will ultimately be sustained. Such sum as the judgment appears to be entitled to under the principles we have indicated must be retained by the court, to abide the result of the pending issue.

Decree reversed, and record remitted to the court below, with instructions to decree distribution conformably with this decision.

### NEAL & WAMPLER'S APPEAL.

The second, third and fourth assignments will be considered together. They charge the improper rejection of certain mechanics' claims, in the distribution of a fund raised by a sale of real estate. The sale was made by the committee of an habitual drunkard. The mechanics' claims had been filed against a " double dwelling-house," &c. The objection taken was that

the structure against which the lien had been filed was not a "double house," but was two distinct houses, and the claim was not apportioned.

Sect. 13 of the Act of 16th June 1836, Purd. Dig. 1033, pl. 43, declares "in every case in which one claim for materials shall be filed by the person against two or more buildings owned by the same person, the person filing such joint claim shall, at the same time, designate the amount which he claims to be due him on each of such buildings, otherwise such claim shall be postponed to other lien creditors." Sect. 38 of the Act of 25th April 1850, Idem. pl. 42, extends the law to cases for work done; and for work done and materials furnished, as fully and in the same manner as previously authorized and allowed in cases of materials furnished. Hence, if the building against which the lien was filed, was composed of two distinct houses, the claimants had disregarded the clear mandates of the statute, and their claims must be postponed to those of other lien creditors: Thomas v. James, 7 W. & S. 381; Chambers v. Yarnall et al., 3 Harris 265; Goepp v. Gartiser, 11 Casey 130.

The auditor found as a fact, that the structure was two distinct buildings. The court confirmed that finding. A reference to the evidence clearly justifies this conclusion. They are shown to be as distinct as any two houses in a row; completely divided by partitions from lower floor to top of attic; the cellars separated by double chimney and substantial partitions; no communicating doors between the two buildings; separate outside doors, both front and rear, for each; and the front yards separated by a fence extending from the division line between the buildings to the street fence. It is true they were contiguous parts of one block, yet they were separate houses and so occupied. But being a disputed question, it was for the auditor to find the fact: Munger v. Silsbee, 14 P. F. Smith 454. He found correctly.

As the fifth assignment does not involve the question of payment or satisfaction of the judgment after its rendition, there was no error in the auditor not going behind it: Borland's Appeal, 16 P. F. Smith 470.

We have shown in an opinion, just filed, in Malone's Appeal, from the same decree, the validity of the judgment will be determined in another issue, and the fund will await that result for a final decree. On the whole record, the appellants have no just ground for complaint.

Appeal dismissed, at the costs of the appellants.