Statement of Facts.

SEBASTIAN DELP v. BARTHOLOMAY BREWING CO.

ERROR TO THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY.

Argued October 26, 1888—Decided November 5, 1888.

1. Where, by the terms of his agreement in the purchase of property, the vendee has undertaken the payment of the vendor's creditors, one of the latter may sustain an action in his own right against him, to enforce payment in accordance with the agreement.

2. In such case, § 1, act of April 26, 1855, P. L, 308, requiring an agreement to answer for the debt or default of another to be in writing and signed by the party to be charged therewith, has no application.

(a) Hotel proprietors executed a bill of sale of the leasehold, furniture and effects, in consideration of part cash, and the further consideration that the vendee assumed to pay "about $23,500" partnership debts made in the "furnishing and improving" said hotel.

(b) With the bill of sale the vendee executed a bond to the vendors conditioned that he would indemnify them from the payment of any and all debts of the firm contracted "in furnishing and running" the hotel "presently due and to become due."

3. In such case the bill of sale and the bond constituted the contract between the parties, and the vendee thereby became liable to a creditor of the vendors, for liquors furnished for the business of the hotel before the sale.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK WILLIAMS and HAND, JJ.

No. 147 October Term 1888, Sup. Ct.; court below, No. 416 October Term 1887, C. P. No. 2.

On October 3, 1887, a summons in assumpsit was served in an action by the Bartholomay Brewing Co. against Sebastian Delp, to recover a balance of an account for beer sold and delivered to Bingham & Spencer.

At the trial on February 28, 1888, plaintiff company proved the sale and delivery of beer to Bingham & Spencer, of the Hotel Albemarle, continuously from August 21, 1886, to February 1, 1887, and a balance due therefor of $430, with a credit of $100 on said balance, paid by the defendant on February 18, 1887. They then proved the transfer of the Hotel Albe-

marle to the defendant and put in evidence the following bill
of sale, dated January 31, 1887, executed by James M. Bing-
ham and C. M. Spencer, marked, exhibit

## A

" For the consideration of thirty-five hundred dollars paid
to J. M. Bingham by S. Delp, and five thousand dollars paid
to C. M. Spencer by S. Delp, the receipt whereof is hereby
acknowledged by said Bingham & Spencer, and the further
consideration of the said S. Delp assuming to pay about
twenty-three thousand five hundred dollars partnership debts
of the late firm of Bingham & Spencer, proprietors of the
Albemarle Hotel, Sixth street, Pittsburgh, and made in the
furnishing and improving said hotel, we, the said J. M. Bing-
ham and C. M. Spencer, do hereby sell, assign, transfer and
set over unto the said S. Delp, his heirs and assigns, all our
right, title, interest, claim of, in and to the said Albemarle
Hotel, including all the goods, chattels, furniture, fixtures and
all personal property whatever now in said hotel and used in
carrying on said hotel, with all goods and materials on hand,
liquors, etc., stock, etc.; as also lease of said premises between
T. H. Baird Patterson, trustee and agent of the devisees of
Joseph Patterson, deceased, dated March 22, 1886; and also
all outstanding claims and bills payable to said firm by the guests
of said hotel and customers of said hotel. Possession of said
premises is hereby given to said Delp."

and followed with a bond executed and delivered by S. Delp
to James M. Bingham and C. M. Spencer, in $30,000, dated
also January 31, 1887, with the condition following, the bond
being marked, exhibit

## B

" The condition of the above obligation is such, that if the
above bounden Sebastian Delp, his heirs, executors, adminis-
trators, shall and do from time to time, and at all times here-
after, well and sufficiently save, keep harmless and indemnify
the said James M. Bingham and Charles M. Spencer, their
heirs, executors, administrators or assigns, of and from the
payment of any and all the debts of the late firm of Bingham
& Spencer, composed of James M. Bingham and Charles M.
Spencer, recently conducting the Hotel Albemarle, Sixth street,
in the city of Pittsburgh, county and state aforesaid, contracted

during the continuance of the said firm in furnishing and running the same, presently due and to become due, and of and from all actions, suits, judgments, payments, costs, charges and damages for or by reason thereof then this obligation to be void, otherwise to be and remain in full force and virtue."

The defendant, in his case in chief, produced receipted bills for wages and other accounts for furnishing and running the hotel, paid after his purchase of it, on acount of Bingham & Spencer, to an amount exceeding, as was claimed, the sum of $26,600. He admitted that he had paid to the plaintiff $100 upon the claim in suit, but it was while he yet had in his hands a large part of the consideration money, and he testified to facts from which it was urged that when the purchase of the hotel was made the amount of the indebtedness of Bingham & Spencer had been misrepresented to him.

The testimony of the defendant, as well as that of the plaintiff in rebuttal, is sufficiently indicated in the opinion of the court.

The court, MAGEE, J., answered the points presented and charged the jury, in part, as follows:

The counsel have presented points of law for instruction by the court, which suggest the important questions of the case.

Plaintiff's points:

1. If the jury believe that Bingham & Spencer transferred their entire business assets to S. Delp, charged with the indebtedness of Bingham & Spencer, and that Delp agreed, out of the proceeds and avails of the business and property, to pay the creditors of Bingham & Spencer, and that the claim of the plaintiff was a part of this indebtedness, and that Delp did actually receive the property under this condition, the verdict should be for the plaintiff.

Answer: Affirmed.[1]

2. If the jury believe that Bingham & Spencer sold their entire business to Delp, and by agreement between them Delp retained, out of the consideration or purchase money, a certain sum which he was to apply to the payment of Bingham & Spencer's creditors, and that Delp recognized the claim of plaintiff and promised to pay it while in possession of sufficient funds for this purpose, their verdict should be for plaintiff.

Answer: Affirmed.

3. If the jury believe that after the execution of the agreement between Bingham & Spencer and defendant, defendant paid plaintiff $100 on account of their claim, and at that time promised to plaintiff to pay the balance of their account, and at the time of so promising had in his hands a balance of the consideration money sufficient to pay balance of plaintiff's claim yet unapplied, the verdict should be for the plaintiff, although defendant, subsequent to said promise actually paid out all the consideration money in his hands.

Answer: Affirmed.[2]

Defendant's points:

1. That upon the pleadings and evidence in this case the plaintiff cannot recover.

Answer: Refused.[5]

2. That there is no evidence of any binding agreement upon the defendant obligating him in law to pay the plaintiff's claim against Bingham & Spencer sued upon in this case.

Answer: Refused.

3. That there is no obligation shown upon the defendant's part to pay any debts of Bingham & Spencer outside of the bill of sale, exhibit A, and the plaintiff's bill not being covered by the terms thereof, they cannot recover.

Answer: Refused. We regard exhibit B, given in connection with exhibit A, as also forming part of the terms of the contract of sale, and are of the opinion that both exhibits are to be used and considered in determining the agreement or contract of the parties and the obligations and liabilities incurred by the defendant to Bingham & Spencer, or their creditors, in the consummation of the sale.

4. The defendant having shown that he had paid bills of Bingham & Spencer, exceeding $26,600, amounting to nearly $3,000 in excess of the amount named in exhibit A, he cannot be held liable in this action.

Answer: Refused. It is assumed in this point as an established fact that payments have been made to the amount of $26,600, nearly $3,000 in excess of the amount named in exhibit A. The amount paid by the defendant is a disputed question for your determination, and its ascertainment depends upon the evidence. In my general charge I shall endeavor to give you the rules of law on the subject matter of the point, by which you are to be guided in your deliberations.

5. If the court refuses the first point above, then the court is asked to charge the jury that if the debt sued upon is one which the defendant undertook to pay, the agreement so to do was void if Bingham & Spencer procured said agreement upon a representation to the defendant that the debts he was assuming to pay were below $23,500 by at least $1,500, to $3,500, and in such case the plaintiff cannot recover.

Answer: Affirmed, if you find that misrepresentations were made, and that they were made in fraud and with intent to deceive, and that the defendant was thereby deceived, in connection with the amount of the contract finally named as about $23,500.[3]

6. If the jury find that the defendant took an assignment of the Hotel Albemarle upon an agreement to pay debts of which the plaintiff's was one, and that said agreement was procured by the representations of Bingham & Spencer that the debts would not at the utmost limit exceed $22,000, and they did exceed $26,000, and that over $25,000 was paid by the defendant, then the plaintiff cannot recover because of such misrepresentations.

Answer: This point is affirmed, unless you find from the amount fixed by the contract as " about $23,500," and the payments voluntarily made by the defendant under the contract, evidence to satisfy you that the representations made were not misrepresentations intended to deceive, but were made in view of the uncertain amount of the actual indebtedness existing at the time to be paid.[4]

\*     \*     \*     \*     \*     \*     \*     \*

The court has looked upon these writings as the contract of the parties, in the premises, and that the writings include all that they have finally agreed upon; and that as to the terms, conditions and limitations of the agreement the written contract must speak for itself. With reference to the construction of contracts it is held to be matter of law; that is, that what a contract means is a question of law, and is to be determined by the court. It is my duty, therefore, to give to you as matter of law what the legal construction of the contract is.

What did the parties themselves mean and understand? If that can be ascertained, it is our duty to give force and effect to the terms, language and provisions of the contract, to the

Charge of Court below.

end that the intent and meaning of the parties shall be enforced and secured. The intent and meaning of the parties to the contract appears to be, on the one part, to transfer the hotel property and secure the payment of the hotel indebtedness, of some kind; and, on the other part, the intent to accept the transfer and to incur or assume liability to a certain extent thereby: and I say to you, as to the meaning of the contract or the construction to be put upon it by you, that the indebtedness contemplated by the ageeement was not limited as expressed in the bill of sale merely to furnishing and improving, but would, as expressed by the terms of the bond, include indebtedness for running the hotel. I am convinced that such was the intent and meaning of the parties, by the fact that bills against Bingham & Spencer, for items of a like character to this claim and for running expenses of the hotel, were paid by the defendant under the terms of this contract. The limit of defendant in his liability, I take it to be about $23,500, something more or less, and within reasonable proximity to the amount fixed, as circumstances may require; and, as the creditors are not named or specified in the writings, I take it that it would be the privilege of the debtors, Bingham & Spencer, to indicate, if they saw proper so to do, the line of payment, and in the absence of any direction on their part, then it would be the privilege of Delp to make the application to the payment of the indebtedness in his own way. When the limit of liability assumed has been answered by payments to the full extent, the obligations have been met and the liability of the defendant under the contract is at an end. The liability as assumed is not satisfied simply by the payment of $23,500, but by the payment of a sum *about* that amount, and such as you may under the circumstances consider reasonable; about that sum and needed to meet the debts. If, however, the payments made at the time this action was begun (or if you find no evidence to indicate an earlier appropriation, in which event the earlier date would control) did not amount to the full liability incurred by defendant, I take it that the plaintiff would be entitled to recover to an amount at least not exceeding the total liability of the defendant under his contract and not at the time paid out.

It is contended by the defendant that the contracts, agree-

ments or writings in evidence, made with Bingham & Spencer create no obligation on his part in law whereby an action will lie against him by the creditors of Bingham & Spencer; that no privity of contract exists between him and them, and that the provisions or obligations incurred, if enforceable at all by strangers to the contracts, must have first been assumed and reduced to writing between himself and such strangers. Under the ruling in the case of Justice v. Tallman, 86 Pa. 147, and other cases, I am of the opinion that the rule of law contended for is not applicable to the present case and cannot be invoked to defeat this action.

Without entering into a review of the evidence I may say that it will be your duty to determine whether the indebtedness by Bingham & Spencer to the plaintiff was contracted by them during their management of the hotel in furnishing and running the same, and whether, at the time suit was brought by plaintiff, the liability of the defendant for payments, to the amount I have heretofore indicated as the extent of defendant's liability, has been discharged. You will also determine whether or not there has been produced satisfactory evidence of the existence of the debt by Bingham & Spencer to the plaintiff.

The jury returned a verdict in favor of the plaintiff for $351.45. A rule for a new trial having been discharged, judgment was entered, when the defendant took this writ, assigning as error:

1, 2. The answers to the plaintiff's points.[1] [2]

3–5. The answers to the defendant's points.[3] [to] [5]

*Mr. M. A. Woodward* (with him *Mr. John H. Mueller*), for the plaintiff in error:

1. If the plaintiff can sustain a suit against the defendant, it must be upon some principle enunciated in Adams v. Kuehn, 119 Pa. 85. But what was done between Delp and Bingham & Spencer, to give the plaintiff a right to sue Delp? The bill of sale shows a transfer in consideration of $8,500 cash, and the " assuming to pay about $23,500 partnership debts. . . . . made in the furnishing and improving said hotel." No trust, in any proper sense, is created thereby. The property is sold

outright. The purchaser pays $8,500 cash and personally assumes a comparatively definite amount of a certain kind of debts.

2. Moreover, if the defendant be liable in this suit, he is liable, as mentioned in Adams v. Kuehn, not only to a multitude of separate suits by as many creditors, but also to suits on the same papers, brought by Bingham & Spencer, and worse than all, the defendant would seem to be liable to any amount, however great. The obligation created by the bill of sale could not be thus broadened by the bond given. The bond was merely collateral, and as an independent undertaking showed nothing enabling the plaintiff to sue. It is merely a personal obligation, and is not only much more extensive in character and in amount than the consideration of the bill of sale, but is outside of it, for that consideration is clearly defined and restricted both as to subject and amount, and the consideration of the bond is not.

*Mr. Joseph Stadtfeld* (with him *Mr. Walter Lyon* and *Mr. J. C. Shoemaker*), for the defendant in error:

The defendant's promise was not to pay the debt of another, but it was to pay " about $23,500 "of the purchase money due by him, to third parties, to wit: the vendors' creditors, of whom the plaintiff was one. It was his own debt which the defendant agreed to pay to parties nominated by his vendors and subsequently affirmed by his own recognition and promise. A person for whose benefit the contract is made may maintain his action against the person who has received the property of the original debtor, and has agreed to substitute himself for the debtor, and such an agreement is not within the act of April 26, 1855: Adams v. Kuehn, 119 Pa. 85; Hind v. Holdship, 2 W. 104; Hostetter v. Hollinger, 117 Pa. 611; Justice v. Tallman, 86 Pa. 147; Clymer v. De Young, 54 Pa. 118; Taylor v. Preston, 79 Pa. 441; Stoudt v. Hine, 45 Pa. 30; Wynn v. Wood, 97 Pa. 216. That the claim of the plaintiff was one clearly included and intended to be included in the contract, was established by the evidence beyond all doubt. The bond, executed with the bill of sale and the only paper executed by the defendant defining his obligation and liability, was sufficient evidence of his liability.

OPINION, Mr. JUSTICE CLARK:

On the 31st of January, 1887, Bingham & Spencer, who were lessees and proprietors of the Hotel Albemarle, in the city of Pittsburgh, executed a bill of sale to Sebastian Delp for the leasehold, with the furniture, fixtures, etc., and generally of the personal property, used in, or belonging to, the hotel, including the stock of liquors on hand, with the outstanding claims, bills payable, etc. The consideration expressed was $3,500 to Bingham, $5,000 to Spencer, and the "further consideration of the said Sebastian Delp assuming to pay about $23,500 partnership debts of the late firm of Bingham & Spencer, proprietors," etc., "made in the furnishing and improving said hotel." Contemporaneously with the execution of the bill of sale, a bond was executed by Delp to Bingham & Spencer, in the sum of $30,000, conditioned that the said Delp would thereafter indemnify Bingham & Spencer from the payment of any and all of the debts of the firm, contracted in "furnishing and running" the Hotel Albemarle, "presently due and to become due, of and from all actions," etc. Possession was taken at once and thereafter the hotel was constructed by Delp.

Mr. Delp testifies that he could not get an itemized statement of the indebtedness, but Bingham & Spencer told him, at the time, that these debts would not exceed from twenty thousand to twenty-two thousand dollars, and their bookkeeper confirmed this statement; whilst their actual indebtedness exceeded this sum several thousand dollars. The bookkeeper, admitting that he told Mr. Delp the indebtedness was from twenty-two thousand to twenty-three thousand dollars, says that he gave Delp an itemized statement of the debts to that amount; that this statement was made on January 4, 1887; that the house was running at a loss of $2,500 per month, and the loss from January 4th to February 1st was to be added to this amount. However this may be in fact, we must assume from the verdict of the jury under the instructions of the court, contained in the answers to the defendant's fifth and sixth points, that if any misrepresentations were made by Bingham & Spencer, as to the extent of their indebtedness, they were not made in fraud or with any intent to deceive Delp, but rather in ignorance of the indebtedness as it actually

existed. The amount stated in the bill of sale was approxi-
mate only; the indebtedness was estimated at " about $23,500;"
and, according to the testimony and the tenor of the writings
executed by Delp, it is plain that he assumed the payment of
the whole as it might ultimately appear. Delp himself says
that Bingham & Spencer at first estimated the amount of their
debts at $15,000, afterwards at $18,000, then at $20,000. The
bookkeeper fixed his estimate at $22,000, and finally the bill
of sale expressed the amount at " about $23,500." If this is
true, it was certainly apparent to Delp that Bingham & Spen-
cer had but little knowledge of their real condition, and com-
mon prudence would have suggested the propriety of insisting
upon an accurate statement and a contract with specific refer-
ence thereto. If by entering into a loose contract he has made
a bad bargain, it is his own fault, and we cannot disturb well
settled rules of the law to relieve him.

The Bartholomay Brewing Company was not a party to this
contract, and the general rule of the law is, that no one can
sue on a contract to which he is not a party, but there are sev-
eral very well recognized exceptions to that rule. " Among
the exceptions," as we said in the very recent case of Adams
v. Kuehn, 119 Pa. 85, " are cases where the promise to pay the
debt of a third person rests upon the fact that money or prop-
erty is placed in the hands of the promisor for that particular
purpose; also, where one buys out the stock of a tradesman
to take the place, fill the contracts, and pay the debts of the
vendor; these cases, as well as the case of one who receives
money or property on the promise to pay or deliver to a third
person, are cases in which the third person, although not a
party to the contract, may be fairly said to be a party to the
consideration on which it rests: in good conscience the title to
the money or thing which is the consideration of the promise
passes to the beneficiary, and the promisor is turned in effect
into a trustee." This doctrine, asserted in a long line of cases,
embracing Blymire v. Boistle, 6 W. 182; Torrens v. Campbell,
74 Pa. 472; Kountz v. Holthouse, 85 Pa. 235; Hostetter v.
Hollinger, 117 Pa. 611; and Adams v. Kuehn, supra, with
many others, has become so firmly imbedded in our jurispru-
dence that it can be no longer questioned.

It is plain that the entire stock and assets of the Hotel

Albemarle were placed in Delp's hands, under the agreement that he would take the place of Bingham & Spencer in the payment of their debts. Delp, by the very terms of the agreement, held the property and effects of Bingham & Spencer for the benefit of such of their creditors as had just claims contracted in the course of their business; he assumed the payment of these debts, and the property was put into his hands for this express purpose. Whether thereby a technical trust was created is not material. It has always been held that the creditor in such a case has a right of action to compel payment in accordance with the agreement. The act of April 26, 1855, requiring a promise to pay the debt or to answer for the default of a third person, has no application: Stoudt v. Hine, 45 Pa. 30; Clymer v. De Young, 54 Pa. 118; Taylor v. Preston, 79 Pa. 436.

It is contended, however, that the debt in suit was not contracted in the "furnishing and improving" of the hotel, and was, therefore, not embraced within the terms of the contract. To furnish, in its ordinary acceptation, is to supply or provide; and, as the bill in suit was for liquors furnished or supplied for use in the hotel, it would be difficult to draw a distinction which would, by the mere force of the language employed, exclude this claim. Besides, it is manifest that the parties so understood their contract; for, in the bond of indemnity, executed at the same time, the debts are defined as those contracted during the continuance of said firm "in furnishing and running" the hotel. If anything more were wanted to explain any supposed ambiguity in the contract, we might allude to the interpretation which the parties themselves have put upon it in the mode of its performance. In the statement of the debts paid by Delp, without objection, we find bills for other liquors, for oysters, natural gas, flour, fish, meat, milk, ice, etc.; indeed, if the testimony is believed, he paid one hundred dollars on the bill now sued upon and promised to pay the balance.

Upon a careful examination of the whole case we find no error, and

The judgment is affirmed.