## POTTER v. CITY OF COATESVILLE, PA.

### (District Court, E. D. Pennsylvania. December 13, 1922.)

**1. New trial ☞157—On motion for new trial after directed verdict, inferences drawn favorably to moving party.**

On motion by plaintiff for a new trial after a directed verdict in his favor, not granting all the relief asked, all inferences should be drawn in his favor.

**2. Municipal corporations ☞352—City held not liable to engineer for failure to withhold payments to contractors for delay.**

Under a contract for the construction of waterworks, requiring the city to deduct from the amount due contractors a specified sum for each day's delay, and to pay such sums to the engineer and inspectors employed by the city to superintend the work, *held* that, though the engineer could sue the contractors thereon, in the absence of evidence that he demanded that city withhold payments for his benefit, the city was not liable to him for its failure to do so; the doctrine that he for whose benefit a promise is given, may recover on it not being applicable.

**3. Municipal corporations ☞352—Court cannot rewrite contracts.**

Neither one of the parties nor any court could rewrite contracts between city and contractors for the construction of waterworks, nor between city and engineer employed to superintend the work.

Affirmed, 297 Fed. 237.

A. M. Holding, of West Chester, Pa., and J. Paul MacElree, of Philadelphia, Pa., for plaintiff.

William Tregay, of Coatesville, Pa., for defendant.

DICKINSON, District Judge. [1] The verdict in this case was for the plaintiff. Notwithstanding this, the motion is by the plaintiff. The explanation lies in the trial fact that the larger part of the plaintiff's claim was thrown out of consideration by the jury following a ruling of the trial·judge. The verdict was a directed verdict. Plaintiff in consequence has the right to any inference which might have been drawn in his favor.

The real question is the construction of a contract. Plaintiff was making what were two claims in one action. For one of these he recovered, with the acquiescence, for trial purposes, of the defendant. We may, because of this, disregard this part of the claim, and consider the cause of action which the plaintiff was asserting as if it were wholly the one which was rejected. The fact situation out of which the respective rights of the parties arose is simple enough in its broad outlines, but, to present the point upon which the ruling of the cause pivots, we must go to some extent into the details.

[2] The city (then the borough) of Coatesville was confronting the water and sewerage problem, which so many of the municipalities of this commonwealth now face. In order to cope with it, the borough authorities were in need of the services of a resourceful and experienced engineer. They found the man of whose services they were in need in

the person of the plaintiff. The first thing to be done was to have a definite arrangement with him respecting his services. He and the borough accordingly entered into a contract, into the details of which it is unnecessary to go, further than to state that he was to do everything required of an engineer to be done up to the time of the full completion of the work to be done for the borough. It was, of course, in the contemplation of both the parties to the contract, that the plaintiff and the defendant would be then done with each other so far as affected their contractual relations.

The work to be done was of a kind which constitutes what now goes under the phrase of "public works." All work of this character has been brought under the control and subjected to regulations of the state authorities. Out of this grew the necessity of securing permits before the borough could proceed with parts of the work which were in contemplation. This meant that the plans for the work, with full or at least descriptive specifications, should be prepared by the plaintiff as the responsible engineer and submitted to the proper state authorities for their approval before permits for the work would go out. This was in the mind of both parties in this case, and provision was made for it in the contract into which they entered. The plaintiff was to secure the required permits.

Passing a number of intermediate steps to be taken, an important thing to be done was to submit the plans and specifications to prospective bidders, to ask for bids and to award the contract. All these things were also in the minds of the parties and provided for in their contract, and were in due course done. Another thing was to have the work called for by these contracts actually done to the satisfaction and acceptance of the borough authorities. There was no one general contract, but a number of different contracts, each relating to some part of the whole work. This involved inspection and supervision of the work done by the several contractors as it progressed. This was also in the minds of the parties to this suit and provided for in their contract. The plaintiff was to do this work of supervision. When the compensation which the plaintiff was to receive for all the very responsible services which he had agreed to render came to be fixed, a highly important element which entered into it was that of time. When the parties to this suit made their bargain, this feature was covered by the provision before mentioned, that he was to render services until the full completion of the work. Compensation in the money sum sense was to be measured by a fixed percentage of what the total cost of the whole work to the borough was found to be.

When the construction contracts came to be drafted, the time limit of performance again became important. That any work which must await the action of public officials will take time is such a notorious truth that it is fair to assume it was in the mind of the parties both to the contract between the plaintiff and defendant and also the parties to the construction contract. At all events a time limit was incorporated into the construction contracts, which was thought by every one to be ample time in which to complete the work. When, however, the contracts came to be put into shape by the then borough solicitor, it oc-

curred to him, in the exercise of that practical wisdom which lawyers sometimes display, that the contract work might overrun the contract time. Following this thought he interpolated claims into the contract to cover it. One was the addition in clause 13 of the phrase (relating to additions to the contract work) "when ordered by" the state authorities. He also inserted what is now clause 21 of the contract. This, with clauses 22 and 28, admittedly presents the turning point of this case, for the meaning which these clauses (and really clause 21) have determines the question of the right of the plaintiff to recover.

With this thought in mind, let us recapitulate the fact features of the then situation. The borough in practical necessity must have the construction work supervised, inspected, and its merits judged. This would cost money. The borough had made provision for all such expense, in the expectation that it would be relieved of it on or before the expiration of the contract time. The contractors had agreed to complete the work within that time. Notwithstanding this, however, there was the possibility that the work might not be completed in time, and the clauses in question were intended to cover this contingency. The contractors agreed to assume and pay all the expenses which might be incurred because of their default. All that then remained was to give it definiteness, and this was done, not by any named sum, because no sum could then be named; but it was measured on a per diem basis, by what would be the equivalent per diem allowance which the borough had already arranged to pay.' This was satisfactory to all parties and was carried into clause 21 and these other clauses.

The contractors did in fact overrun their contract time. This practically compelled the plaintiff to render services, and he did render services, after the expiration of the time limit of the construction contracts, but not after the completion of the work. The borough paid the plaintiff the agreed commission stipulated in its contract for all services rendered by him up to "the completion of the work." They, however, neither held back from the contractor nor paid the plaintiff anything (other than the stipulated commission) for the time the work was protracted beyond the contract time.

The claim of the plaintiff is not merely for the additional time he was thus compelled to give to the work beyond the time stipulated in the construction contracts, but for much more. This results from the fact, already stated, that there were several construction contracts all going on at the same time, each with the like clause 21, and each of which overran the contract time. The plaintiff in consequence claims what might have been deducted from all the contractors as if each had been the only one who defaulted on his time contract.

The claim is asserted to have a twofold legal basis. One is that, although the plaintiff was not a party to the construction contracts, they were none the less made for his benefit, and may be enforced by him. The other is that, as thereby the defendant assumed the obligation to retain the stipulated sum, it is presumed to have retained it, and to be liable to the plaintiff for the moneys thus received to his use. The very capable and experienced counsel for plaintiff confidently assert that

by what may be called this first count in their declaration the action is upon the construction contract.

Our view of it is that the action, being against the borough, is upon its contract with the plaintiff, express or implied, or both. We have no difficulty in the acceptance of the doctrine for which counsel cite a large number of rulings, including the following. The doctrine is that he for whose benefit a promise is given may recover upon it, although he is not the party to whom the promise was in terms made. Hostetter v. Hollinger, 117 Pa. 606, 12 Atl. 741; Kountz v. Holthouse, 85 Pa. 235; Adams v. Kuehn, 119 Pa. 76, 13 Atl. 184; Delp v. Brewing Co., 123 Pa. 42, 15 Atl. 871; Freeman v. Railroad, 173 Pa. 279, 33 Atl. 1034; Edmundson's Estate, 259 Pa. 429, 103 Atl. 277, 2 A. L. R. 1150; Hoffa v. Hoffa, 38 Pa. Super. Ct. 356; Howes v. McCrea, 21 Pa. Super. Ct. 592; Bruce v. Howley, 29 Pa. Super. Ct. 169; System Co. v. Lycoming, 46 Pa. Super. Ct. 499.

The doctrine is a well-established and universally accepted one. Indeed, any doctrine of the law for which Justice Clark stood as authority would be accepted without question. We are unable, however, to see its application to the instant case. Had the plaintiff sued the contractors on their undertaking to pay him, the doctrine would come into play, and the defendant in such action would not be heard to defend on the ground that the promise had not been made in terms to the plaintiff. In the case, however, of a promise of the borough to pay the plaintiff a stipulated compensation for all services rendered by him to the completion of work being done for the borough, how can that obligation possibly be enlarged by the promise of some one else to pay him additional compensation, if the services for which the borough has paid him are extended for a time after a certain date when the extended time is not beyond the date to which he had agreed with the borough to render the service to it?

It seems too clear for argument that the promise of such third person in itself could in no wise affect the contract between the plaintiff and the borough. Nor do we see that the legal situation would be changed whether the promise of such third person was made to the plaintiff direct, or made to the borough for his benefit. As we view it, some other principle than the one first above outlined must be found upon which the plaintiff can recover.

[3] We are also in hearty accord with counsel for the plaintiff in the further proposition he advances that neither the defendant nor any court can rewrite either the contract between the plaintiff and defendant or the construction contracts. Let it be remembered, however, that by the same token neither the plaintiff nor his counsel are privileged to rewrite them. Each and all the contracts must be taken as they are. It is admitted that the contract between the borough and the plaintiff affords the plaintiff in itself no cause of action. He thereby agreed to give the borough the benefit of his service until the completion of all the work which was to be done for the borough, and he has rendered no other service for which the verdict in his favor does not pay him, in addition to what the borough has paid him. What further claim, then, has he upon the borough? His answer is for services rendered after

the time limit of the construction contracts had expired. It is true that all the services rendered are included in the services to be rendered under the contract between the plaintiff and defendant; but nevertheless in the construction contracts the borough undertook to see that the plaintiff received this additional compensation, and the plaintiff has the right to the benefit of this undertaking and to enforce it against the borough.

This takes us to the construction contracts, and it is found that, aside from the one thing the borough agreed it would do and which is next mentioned, the borough contracted to do nothing whatever. All the promises are made by the other parties. This contract does contain, however, the plain admission that the borough had made all its arrangements, including its contract with the plaintiff, upon the expectation that the work would be completed within the time limit. If it was so completed, the borough was content to pay the contract price. If, however, it was not so completed, the construction contractors agreed to pay the same per diem compensation for inspection and supervision which the borough had agreed to pay. In case the payment was not thus made, the contractors agreed to pay the borough an equivalent sum as liquidated damages for their default in not completing the contract on time, and further agreed that the borough might pay itself this sum by deducting it from what would otherwise be due the contractors.

Thus far the contract is clear enough, and no one asserts that any additional obligations were assumed by the borough, other than the one next mentioned. The words of the contract are, however, not merely that the borough may, but also that it "shall, deduct," and "shall pay to the engineer and inspectors," "sums which shall be equal" to this per diem allowance, and shall thus deduct and pay monthly, with further authority, however, to deduct the whole sum out of the final payment, if not before deducted. It is upon these imperative words that the plaintiff relies. Let us, then, review the contract with these words in. The contract clearly provides that the work shall be completed within the time limit, and that the construction contractors have no contractual rights against the borough, unless there has been performance within the time limit. It just as clearly, however, provides that the borough may waive this time limit and permit the work to be thereafter done. If default is thus waived, then the construction contractors, in consideration of the waiver, agree to pay the engineer and inspectors.

It is further made clear that the compensation which the borough has agreed to pay them "on its own account" covers only the contract period, and that any additional compensation "to be paid" to them "is due by reason of the default" of the construction contractors, "and shall be paid by the contractor as liquidated and admitted damages." It is further clear that the borough had no claim to anything except damages for a default, that the contractors agreed to pay the engineers and inspectors, and that, if they did so pay them, the borough had no right to anything by way of damages and no right to deduct anything from the contract price. To make this doubly clear the right is expressly given to the borough (probably to save to it all its rights against sure-

ties) to permit the delayed completion of the work, the contractors agreeing to pay the engineer and inspectors.

There are at least possibilities of liability on the part of the borough into which we need not go, because they are not in the case. One is that, if the borough had deducted any moneys from the contractors, it might be liable to account for moneys received to the use of the plaintiff. Another is that, when the contractors did not pay the plaintiff, if he had notified the borough of the nonpayment and had demanded that it deduct his additional compensation from what was due the contractors, the failure or refusal of the borough might or might not have given him a right of action. Neither of these facts, however, appears in this case. On the contrary, if it does not appear in his own case that he made no demand until after the borough had paid the contractors in full, it does not appear that he made such demand.

Counsel for the borough loudly contend that plaintiff's case contains the admission that, not only did he not make any demand, but that he urged upon the borough that the contractors be paid in full, and it was not until after the borough, in compliance with his appeal, had paid the contractors, that he sprung upon the borough this large claim for additional compensation. This is denied by the plaintiff, and we do not have access to the record to determine this question, nor, unless it was clearly admitted, could we consider it. In consequence, we do not rest the ruling made upon such finding, but upon the negative finding that the plaintiff offered no evidence that he had made any demand upon the borough to withhold payment from the contractor for his benefit.

The case for the plaintiff rests upon the proposition of law that the construction contract imposed the imperative duty upon the borough to withhold the money for the benefit of the plaintiff, and that, whether it withheld the money or failed in its duty to so do, it is alike liable to him. We declined at the trial to so hold, and are still unconvinced of error.

Something was said at the trial of the very question now raised having been raised in limine on a motion for judgment and determined in favor of the plaintiff. If it was so ruled, we would regard it as the law of the case for trial purposes, and would not feel at liberty in justice to the plaintiff to change the ruling, even if we had changed our views. Erroneous rulings may be corrected, but a wabbling ruling of that kind would be a grievous thing, because counsel could not prepare a case or defense for trial. We would treat such a ruling as a trial ruling, to be corrected, if wrong, as any other trial errors would be corrected.

We had no recollection, however, of the questions raised at the trial having before been considered. They were wholly new questions to us. Because of this we sent for the opinion which had been filed, and found we had analyzed the statement of claim at some length, disclosing that the plaintiff had declared, not upon the contract alone, but upon that contract changed by a subsequent express contract to pay the additional compensation now claimed. The plaintiff was not willing, then, to have the questions of law raised decided with this second con-

tract out, and the defendant would not consent to a ruling with it in, and as a consequence we refused to consider abstract questions of law upon which we could enter no judgment, and did not look into the questions then, even so far as to learn what they were. No point was made of any previous ruling at the argument of this motion nor in the brief submitted, and we mention it merely to set the record straight. The question now ruled was considered and ruled only as a trial question, and not otherwise.

The final stand of the plaintiff is made upon the case of Newport News v. Potter, 122 Fed. 321, 58 C. C. A. 483, as decisive of the instant one. That case was decided by the Circuit Court of Appeals for the Fourth Circuit, and we would accept it as authoritative and binding upon us until it was overruled or decided otherwise by a court of equal jurisdiction. The plaintiff here was a party to that cause. We do not read it, however, as ruling the question before us. It happens that we have a knowledge of that case, having been concerned as counsel in certain features of the contract there involved.

The contract was originally one of the ordinary type of city contracts, except, perhaps, in the one particular hereinafter mentioned. Unexpected and at the time of the contract unknown physical conditions were encountered, which abnormally increased the cost of the work, resulting in the default of the contractors, followed by the taking of the work out of their hands by the city. The surety then undertook the completion of the work and proceeded with it to substantial completion. There were important things to be yet done, but a question arose of whether they were part of the construction work, or in the nature of repairs, cleaning, etc. The surety refused to do some of the things required. This was followed by an agreement of settlement between the surety and the city. The city then entered into an agreement with the engineer that he should complete the work the city wished to have done. The engineer went on for some time with the work, until it was taken out of his hands by the city. The suit was brought to determine the compensation to which the engineer had a right. He and the city had two agreements. One was made in advance of the construction, and on the assumption that there would be a compliance with its terms; the other was made after there had been a default, and in the expectation that the city would itself complete the contract. This second contract measured the compensation negatively, by providing that it should not exceed what the engineer would have received, had the work been done by the original contractors.

It thus became important to know what the engineer would have received. He would have received what the city had by its first contract expressly agreed to give him for services within the contract time, and in addition what the construction contracts required the contractors to pay him after the contract time. The contractors had agreed to pay the engineer $25 per day if the contract work was not done within the contract time, and they so paid. The surety likewise paid while they had the work in charge. The agreement of the city to make like payments is sufficiently clear. In no real sense was the claim of the plaintiff based upon the construction contracts. It was based wholly upon

the contract of the city. The only part the construction contracts played was as a measure of what the city had agreed to pay. Without going further into what was ruled in the cited case, it has already been made clear that it does not rule the instant case. There the question was whether the city should pay what it had agreed to pay. Here the question is whether the city is liable, not for what it agreed to pay, but for what the contractors agreed to pay because the city did not compel them to pay.

The motion for a new trial is denied. Following the usual practice, no judgment is now entered, but leave is granted any party in interest to enter judgment on the verdict in favor of the plaintiff and against the defendant for debt, interest, and costs.