## BELL v. JOHN H. GILES DYEING MACH. CO.

Circuit Court of Appeals, Third Circuit.
January 7, 1930.

No. 4114.

Randolph W. Childs and Paul Van Reed Miller, both of Philadelphia, Pa., for appellant.

Ulric J. Mengert and Roberts & Montgomery, all of Philadelphia, Pa., for appellee.

Before BUFFINGTON and DAVIS, Circuit Judges, and THOMSON, District Judge.

THOMSON, District Judge. The Klauder-Weldon Company, a Pennsylvania corporation, being in bankruptcy, the Giles Dyeing Machine Company presented its claim of $44,515.13. This amount the referee reduced to $16,515.13. On review, the District Court allowed the full amount of the claim. From the court's order, so made, this appeal is taken.

The controversy arises out of a contract dated August 27, 1918, between the Giles Company and the Klauder-Weldon Dyeing Machine Company, a New York corporation. By this contract, the Giles Company agreed to deliver to the New York company all its property, including the good will, inventory, patterns, patents, etc., for the sum of $40,000; this price to be increased or diminished by certain provisions of the contract. Under the contract, the New York company agreed to deliver to the Giles Company five interest-bearing promissory notes dated September 1, 1918, in the aggregate sum of $40,000. Definite dates were fixed for the payment of the first four notes, the last note of $7,000, which might be reduced or increased, being payable January 1, 1920. By the agreement, all litigation between the parties was discontinued, the Giles Company being continued as a sell-ing organization on a certain commission basis.

In December, 1918, the New York company made an agreement with the Klauder-Weldon Dyeing Machine Company, the Pennsylvania corporation, by which the New York company sold to the Pennsylvania company all its assets, the latter agreeing to assume all lawful debts and liabilities of the former.

The New York company neglected to make provision for, and pay, the amount due the Giles Company, or to retain assets for that purpose, except through the agreement on the part of the Pennsylvania company to assume the liabilities of the New York company.

In June, 1919, when the first two notes of $12,000 and $7,000, respectively, were payable, the Giles Company caused judgment to be entered thereon, with interest, against the New York company; and in December, 1920, in like manner, it caused judgment to be entered against the New York company on the third and fourth notes of $7,000 each, with interest. Executions were issued on these judgments, but the same were returned unsatisfied; no money being made thereon.

In 1918, the Pennsylvania company was placed in an equity receivership, which was later dissolved by decree of the District Court, the decree reserving the right to creditors to institute suit. On July 13, 1925, being more than six years after the first three notes aggregating $26,000 had matured, the Giles Company brought suit for its claim in the court of common pleas of Montgomery county, Pa., which suit was afterwards stayed.

When the Pennsylvania company was in bankruptcy, the Giles Company presented its claim for $44,515.13, which apparently was based solely on the promissory notes, but the company claimed that the notes were not given in payment of the obligations of the contract, and that as the contract was under seal, the six-year period of limitations was not applicable. The referee held that the Statute of Limitations (Acts March 27, 1713, 1 Smith's Laws, p. 76, § 1, and May 28, 1715, 1 Smith's Laws, p. 90, § 6; Pa. St. 1920, §§ 13857, 13861) barred recovery on the notes falling due prior to July 13, 1925.

The learned court below reversed the order of the referee, holding that this was an equity proceeding, in which the claimant had an equitable lien upon the assets of the Pennsylvania company, and that the claim of the

plaintiff is not barred by the Statute of Limitations or by laches.

We think the learned court was in error in its conclusion for the following, among other, reasons:

■ The claim based upon the notes was clearly sufficient to support an action at law. That it was so regarded is shown by the fact that suit was brought thereon in the courts of the state of New York, and also in Montgomery county, Pa. This latter suit was stayed after the proceedings in bankruptcy, but an examination of the proof of claim shows that the Giles Company was still basing its action on the notes. It referred, in its proof of claim, to the copy of plaintiff's statement in the suit pending in Montgomery county, and annexed a copy of that statement as part of the proof of claim. The claim also alleged that the bankrupt agreed to assume, and did assume, all the lawful debts, liabilities, and obligations of the New York company. It would appear clear, therefore, that as a creditor of the New York company, the claimant was entitled to an action at law. This is established in Delp v. Bartholomay Brewing Co., 123 Pa. 42, 15 A. 871; Cox v. Philadelphia Pottery Co., 214 Pa. 373, 63 A. 749; and other cases.

■ There would seem to be no authority for the position that a proof of debt in a proceeding in bankruptcy is to be regarded as a proceeding in equity. The only case where it can be so regarded is where a purely equitable title or right of action is involved.

■ Suits in equity cannot be sustained in the courts of the United States in a case where a plain, adequate, and complete remedy may be had at law. Terrace v. Thompson, 263 U. S. 197, 44 S. Ct. 15, 68 L. Ed. 255.

This principle is so well established as to need no extended citation.

■ It is clear that the Pennsylvania Statute of Limitations is applicable in the federal courts where a Pennsylvania action is involved. Section 721 of the Revised Statutes (28 USCA § 725).

Both in theory and in fact, the claimant's action was in assumpsit, an action upon the bankrupt's promise to pay, and not upon any equitable lien. This is not a case where the property of one company is sold, and there is no assumption of debts of that company by the bankrupt. In such case, the claimant might invoke the aid of a court in equity to establish and enforce what might be called an equitable lien. His right, if any such existed in that case, would be equitable, rather than legal, because if there was no assumption of liabilities by the transferee, claimant could have no remedy at law.

■ This case being in bankruptcy, the bankrupt court will enforce the statute of limitations of the state of the bankrupt's residence. Hargadine, etc., Co. v. Hudson (C. C. A.) 122 F. 232; In re Dunavant (D. C.) 96 F. 542.

■ Even if the claim was regarded as equitable, where the jurisdiction of law and equity is concurrent, the federal courts follow the state statutes, more by obedience than analogy. Godden v. Kimmell, 99 U. S. 201, 25 L. Ed. 431.

■ It is a common saying that equity follows the law, and while there is strictly no statute of limitations against an equitable proceeding, by analogy to the statute, the court will usually bar the proceeding on the ground of laches.

■ Even if a federal court of equity was free to disregard a state statute of limitations, the court would do so only where there were exceptional circumstances, which would make its application wholly inequitable. Kelley v. Boettcher (C. C. A.) 85 F. 55; Indiana & Arkansas Lumber & Mfg. Co. v. Brinkley (C. C. A.) 164 F. 963.

There appear to be no such circumstances in this case as would warrant disregarding the Statute of Limitations. It follows that the judgment of the court below should be reversed, and the order of the referee reinstated.